```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

In re:                              *

DERRICK MILLARD, SR. and            *
TRACIE MILLARD                          Case No. 08-17964 WIL
                                    *       (Chapter 13)
          Debtors
*      *      *      *        *

SUNTRUST BANK                       *
              Appellant                 CIVIL ACTION NO. MJG-08-3002
                                    *
     vs.
                                    *
DERRICK MILLARD, SR. and
TRACIE MILLARD                      *

              Appellees             *

*      *      *      *        *     *      *      *      *
```

                      FINAL DECISION ON APPEAL

The Court has before it Appellant/Defendant SunTrust Bank's ("SunTrust") Notice of Appeal from the Bankruptcy Court's Order Granting Motion to Avoid Lien on Debtors' Principal Residence [Document 1, Att. 22] and the materials submitted by SunTrust[1] relating thereto.  The Court finds that a hearing is unnecessary.

---

1 Debtors/Appellees Derrick and Tracie Millard (the "Millards" or "Appellees") have filed nothing whatsoever in the instant appeal.

## I.  APPELLEES' INACTION

Bankruptcy Rule 8009(a) requires an appellee to file a brief with the district court on appeal.  However, the Millards did not do so.  It is, therefore, necessary to determine what, if anything, shall be the consequence of their failure to comply with Rule 8009.

The Bankruptcy Rules do not provide a sanction for an appellee's failure to comply with Rule 8009(a).  The district courts that have addressed this issue have looked to Rule 31 of the Federal Rules of Appellate Procedure, the analogue of Bankruptcy Rule 8009, for guidance.  The appellate rule provides that, in instances in which an appellee has failed to file a responsive brief, the "appellee will not be heard at oral argument except by permission of the court."  FED. R. APP. P. 31(c).  Of course, if there is no oral argument, the sanction is without practical effect.  See Shafer Redi-Mix, Inc. v. Craft, 2009 U.S. Dist. LEXIS 21144, at *11 n.1 (W.D. Mich. Mar. 17, 2009) ("Had this Court deemed oral argument necessary, [Appellee's] failure to file a brief may have barred his participation at oral argument."); IRS v. Donahue, 406 B.R. 407, 411 (M.D. Fla. 2009) ("[T]he appropriate sanction would be to deny the [appellees'] an opportunity to be heard at oral argument . . . . However, this Court finds that oral argument

is unnecessary"); In re Rauso, 212 B.R. 242, 244 (E.D. Pa. 1997)(prohibiting appellee from offering oral argument, but noting that "[t]his sanction is merely theoretical, however, as the Court finds this appeal suitable for decision without oral argument.").

This Court finds the Appellees' complete disregard for their procedural obligation most regrettable. Even pro se litigants should be held to at least minimal compliance with their procedural obligations. Certainly, if the instant case were in a trial context, the Court might well find that a default judgment would be appropriate. However, "[i]t is unclear whether this Court has the authority to impose a sanction harsher than that provided for in Appellate Rule 31(c)." Rauso, 212 B.R. at 244; A. Marcus, Inc. v. Farrow, 94 B.R. 513, 515 (N.D. Ill. 1989) (same). And, it would not be appropriate – absent clear authority from the United States Court of Appeals for the Fourth Circuit[2] – for this Court to impose the sanction of default upon an appellee so as to reverse a bankruptcy judge's decision that is not reversible on the merits.

---

[2] **If the United States Court of Appeals for the Fourth Circuit would permit this Court to effectively grant a default judgment in the instant case, the Court would do so.**

Accordingly, the Court will impose no sanction upon Appellees and will decide the instant appeal on the record before it.

II. <u>BACKGROUND</u>

In January of 2005, the Millards purchased their primary residence for $695,000. In order to purchase the residence, the Millards financed 100% of the home's purchase price utilizing two deeds of trust. The first-lien deed of trust, executed in favor of First Franklin, secured a loan of $556,750 that represented 80% of the purchase price. The second-lien deed of trust, also executed in favor of First Franklin, secured a loan of $138,250 that represented 20% of the purchase price.

The Millards refinanced the second deed of trust twice, with the second refinanced loan executed in favor of SunTrust to secure an equity line of credit in the amount of $280,000. On June 16, 2008, the Millards filed for bankruptcy under Chapter 13.

On July 8, 2008, First Franklin, through its trustee, filed a Proof of Claim for $620,790.22, which included $60,171.12 in arrearages and expenses. On July 10, 2008, SunTrust filed a Proof of Claim for $253,010.47, which included $22,419.71 in arrearages and expenses. On October 2, 2008, the bankruptcy judge held a hearing on the Millards' Motion to Void

[SunTrust's] Lien on Principal Residence, and found that the Millards' residence "is not worth more than $599,000." (Mot. to Avoid Hr'g Tr. 35:11, Oct. 2, 2008.) As a result of the foregoing valuation, the bankruptcy judge, relying upon Johnson v. Asset Mgmt., 226 B.R. 364 (D. Md. 1998), concluded that the SunTrust deed of trust, a wholly unsecured[3] second lien, was avoidable under 11 U.S.C. § 506 because the amount owed on the note secured by the first deed of trust exceeded the value of the Millards' primary residence.

III. STANDARD OF REVIEW

When a district court reviews a bankruptcy court's final order, the district court acts as an appellate court. While the bankruptcy court's factual findings are reviewed for clear error, legal conclusions are considered de novo. In re Duncan, 448 F.3d 725, 728 (4th Cir. 2006) (citing In re Bogdan, 414 F.3d 507, 510 (4th Cir. 2005)). SunTrust does not challenge the underlying valuation of the Millards' primary residence.

---

[3] In this context, the phrase "wholly unsecured" is used to describe a junior lien initially secured by a security interest in the debtor's residence, and is, in that sense, a secured claim. However, that lien is deemed wholly unsecured because the value of the debtor's residence is less than the amount due on a senior lien. Thus, the senior lienholder is deemed undersecured and the junior lienholder is wholly unsecured because, at the time of valuation, no equity exists in the underlying collateral to secure the claim of the junior lienholder.

Therefore, there is no factual dispute and the Court shall review the bankruptcy court's decision de novo.

IV. DISCUSSION

SunTrust contends that the anti-modification clause of 11 U.S.C. § 1322(b)(2) prohibits the voiding of its second-lien deed of trust on the Millards' principal residence. In essence, SunTrust argues that Johnson was wrongly decided because it misconstrued the Supreme Court's analysis in Nobelman v. Am. Sav. Bank, 508 U.S. 324 (1993).

    A.    The Interplay of 11 U.S.C. §§ 506(a) and 1322(b)(2)

In Nobelman, the Supreme Court analyzed the interplay between claim-bifurcation under § 506(a) and the anti-modification clause of § 1322(b)(2) to determine whether a debtor could bifurcate a single, undersecured residential mortgage claim into secured and unsecured components pursuant to § 506(a).[4] Id. at 326. The debtor in Nobelman asserted that § 1322(b)(2)'s anti-modification provision applied only to the secured component, as that term was defined in § 506(a), of her

---

[4] The debtors in Nobelman had a primary residence valued at $23,500 and a first mortgage claim for $71,335. The debtors' Chapter 13 plan proposed to bifurcate the mortgagee's claim under § 506(a) into a secured claim of $23,500 and an unsecured claim of $47,835. Nobelman, 508 U.S. at 326.

6

mortgage claim. <u>Id</u>.

Section 506(a), which applies to Chapter 13 plans pursuant to 11 U.S.C. § 103, states that

> (a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Thus, under § 506(a), "an allowed claim secured by a lien on the debtor's property is a secured claim to the extent of the value of the property; to the extent the claim exceeds the value of the property, it is an unsecured claim." <u>Nobelman</u>, 508 U.S. at 328. However, § 1322(b)(2), which applies only to Chapter 13 bankruptcy, provides that

> (b) Subject to subsections (a) and (c) of this section, the plan may —
> . . .
> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence
> . . .

11 U.S.C. § 1322(b)(2). The <u>Nobelman</u> Court concluded that where a creditor's lien is at least partially secured, § 506(a) does not operate to eliminate the creditor's rights in the unsecured component. <u>Nobelman</u>, 508 U.S. at 332; <u>see</u> <u>Johnson</u>, 226 B.R. at

7

366.

As noted in Johnson, the Supreme Court's decision in Nobelman left open the question of whether its holding extends to junior lienholders, like SunTrust, who hold a wholly unsecured homestead lien. Johnson, 226 B.R. at 366. After a detailed analysis of Nobelman, this Court adopted the majority view, which espouses the position that the anti-modification provision in § 1322(b)(2) protects only those homestead liens that are at least partially secured – as that term is defined by § 506(a) – by some existing equity after accounting for encumbrances that have senior priority.[5] Johnson, 226 B.R. at 369. Since the decision in Johnson, six Courts of Appeals have likewise concluded that a wholly unsecured lien is not protected under the anti-modification provision of § 1322(b)(2). See Zimmer v. PSB Lending Corp. (in re Zimmer), 313 F.3d 1220 (9th Cir. 2002); Lane v. W. Interstate Bancorp (in re Lane), 280 F.3d 663 (6th Cir. 2002); Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122 (2d Cir. 2001); Tanner v. FirstPlus Fin., Inc. (In re Tanner), 217 F.3d 1357 (11th Cir. 2000);[6] Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277 (5th

---

[5] The minority view prohibits the avoidance of a wholly unsecured homestead lien.

[6] But see Am. Gen. Fin., Inc. v. Dickerson (In re Dickerson, 222 F.3d 924, 926 (11th Cir. 2000) (explaining that had the panel not been bound by the prior Tanner panel decision, the instant panel would adopt the minority view).

Cir. 2000); McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606 (3d Cir. 2000).

B.    SunTrust's Arguments on Appeal

SunTrust argues that Johnson, and the majority view in general, fails to give proper weight to Congress' intent to confer "favorable treatment" upon residential mortgagees in an effort to "encourage the flow of capital into the home lending market." Nobelman, 508 U.S. at 332 (Stevens, J., concurring) (discussing the legislative history of Chapter 13 home mortgage provisions).  Although Johnson did not explicitly discuss Justice Stevens' brief concurrence, several Courts of Appeals that have opined on the legislative history have concluded that the favorable treatment afforded residential mortgagees under § 1322(b)(2) extends only to first or purchase-money mortgages. See Zimmer, 313 F.3d at 1227 ("Furthermore, although Justice Stevens recognized a congressional policy in favor of promoting home lending, we join other courts in interpreting this as applying to first or purchase-money mortgages."); Bartee, 212 F.3d at 294 (reviewing the legislative history of § 1322(b)(2) and concluding that "[p]assage of [the anti-modification provision] demonstrates that Congress intends to maintain the protections afforded home mortgage lenders, while preventing 'thinly disguised personal' lending from taking advantage of

those protections."); see also Domestic Bank v. Mann (In re Mann), 249 B.R. 831, 840 (B.A.P. 1st Cir. 2000) ("[F]ailing to differentiate between true mortgage lending and the practice (seen by many as predatory) of obtaining mortgages on already oversecured property in support of the collection of otherwise unsecured dischargeable debt would do far more damage to the goals of Congress in enacting the anti-modification provision of § 1322(b)(2)").

The soundness of this position is bolstered by Congress' subsequent enactment of § 1322(c)(2) as part of the Bankruptcy Reform Act of 1994. Section § 1322(c)(2) creates an exception to the anti-modification provision for certain mortgages such as short-term and balloon mortgages. See 8 Collier on Bankruptcy P 1322.16 (15th ed. rev. 2009). The enactment of § 1322(c)(2) suggests that Congress did not intend the anti-modification provision to apply indiscriminately to all liens secured by residential mortgages. This Court finds the reasoning of the Courts of Appeals and the First Circuit Bankruptcy Appellate Panel persuasive, and rejects SunTrust's contention that the majority position fails to give proper weight to the congressional intent underlying § 1322(b)(2). Accordingly, this Court, in accordance with Johnson, holds that SunTrust possesses

a wholly unsecured claim pursuant to § 506(a).[7]

SunTrust further argues that its lien should be afforded protection under § 1322(b)(2) because the original, second-lien deed of trust was extended to finance 20% of the purchase price of the Millards' principal residence. However, with regard to the debt at issue, SunTrust is not a purchase-money lender. SunTrust refinanced the loan at issue approximately one year <u>after</u> the Millards purchased their home. Accordingly, SunTrust's loan did not facilitate home building or home buying. To the contrary, the equity line of credit SunTrust extended to the Millards increased the original purchase-money loan almost two-fold.[8]

---

[7] The fact that the bankruptcy court's Order Granting Motion to Avoid Lien on Debtors' Principal Residence stipulates that SunTrust's lien "shall be avoided . . . at such time as a discharge Order is entered" does not change the result. <u>See</u> 8 Collier on Bankruptcy P 349.03 ("[S]ection 349(b)[of the Bankruptcy Code] specifies that the dismissal of a case reinstates voided liens") (15th ed. rev. 2009); <u>Flowers v. Firstplus Fin., Inc.(In re Flowers)</u>, 1999 Bankr. LEXIS 1192, at *18 (Bankr. E.D. Va. Jan. 14, 1999) ("Conditioning avoidance upon the debtors' receipt of a discharge seems appropriate, since dismissal, whether voluntary or involuntary, of the debtors' case prior to discharge would have the legal effect of restoring FirstPlus's lien.").

[8] SunTrust further decries the purported unfairness of this result by arguing that, given the longer length of its loan terms and the cyclical nature of real estate, it is unjust for a debtor to avoid a loan based on a short-term downturn in the real estate market. Unfortunately, the Millards were forced to file bankruptcy, and the Bankruptcy Code "provides that valuations must be performed and they must be given effect."

SunTrust next takes issue with Johnson's conclusion that "a junior lienholder has no 'right' to be treated more favorably in bankruptcy than in foreclosure." Johnson, 226 B.R. at 369. The Johnson court went on to explain that although a wholly unsecured junior lienholder would receive no financial return in a foreclosure proceeding, a wholly unsecured junior lien that is not stripped off in a Chapter 13 bankruptcy would result in the retention of a security interest in the debtor's home, the right to payment under the plan, and the right to object to the payment plan. Id.

SunTrust argues that it is being treated less favorably in bankruptcy because voiding a wholly unsecured claim "destroys the junior lienholder's rights to force a sale or to protect its interests at a senior lienholder's sale." (Appellant Br. 8.) As this Court previously noted in Johnson, forcing a sale would not result in any funds being delivered to SunTrust upon foreclosure. Id. Moreover, as the Mann court aptly observed, "the right to advance funds to protect collateral has little practical allure for the holder of a completely unsecured lien."

---

Johnson, 226 B.R. at 369. While it is true that the Millards' home may appreciate in value in the future, a judicial valuation must be given to finalize the Millards' Chapter 13 plan. Cf. In re Mann, 249 B.R. at 838 ("[I]f the possibility of property appreciation were to preclude lien avoidance, no final determination could ever be made in a bankruptcy case.")

In re Mann, 249 B.R. at 838.  As such, SunTrust's asserted rights are of no practical consequence because there is no collateral value remaining to secure SunTrust's rights.

Finally, SunTrust contends that, but for the Millards' failure to make their first mortgage payments, it would have a claim secured by approximately $40,000.  Hence, SunTrust seeks to contend in this appeal that the Millards engaged in pre-bankruptcy abuse by purposefully defaulting on their debt to eliminate SunTrust's collateral.  However, the bankruptcy judge did not make such a finding.  See In re Mann, 249 B.R. at 839 ("We have no evidence that the [Debtors] stopped making payments on their first mortgage in order to deplete collateral value for the second.  In fact, it would seem to us to be the rare instance in which the numbers would be so aligned as to afford the opportunity for such a strategy.").

V.   CONCLUSION

For the foregoing reasons, the Court decides that

1.  The claim of Appellant SunTrust Bank is wholly unsecured.

2.  The Bankruptcy Court's Order Granting Motion to Avoid Lien on Debtors' Principal Residence shall be AFFIRMED.

      3.    Judgment shall be entered by separate order.

**SO DECIDED**, on <u>Monday, September 28, 2009</u>.

                                          _____/S/_____

                                          Marvin J. Garbis
                                United States District Judge